UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

CLYDE LEWIS aka LOUIS RANDOLPH,

Plaintiff,

v.

JAMES DZURENDA, et al.,

Defendants.

Case No. 2:19-cv-01729-KJD-DJA

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Presently before the Court is Defendants' Motion for Summary Judgment (#35). Plaintiff filed a response in opposition (#61) to which Defendant replied (#66).

I. Factual and Procedural History

Plaintiff Clyde Lewis ("Lewis") brought his complaint pursuant to 42 U.S.C. § 1983. Following the mandatory screening process required by the Prison Litigation Reform Act, the Court permitted the following claims, relevant to this motion, to survive: Claim 1 alleging violations of free exercise of religion, equal protection, and the RLUIPA against Correctional Officer ("C/O") Mesa; and (2) Claim 4 against Sergeant Fowler ("Sgt. Fowler") alleging violation of the Fourteenth Amendment right to due process based on Plaintiff's disciplinary segregation.

**A. Claim 1**

Deputy Directors, Wardens, and Chaplains are responsible for the practice of Religious and Faith Group services in the Nevada Department of Corrections ("NDOC"). (35-2, at 2). The NDOC is tasked with taking "the necessary steps to ensure inmates are provided their constitutional right to practice their religion." Id. "The religious needs of inmates will be met, taking into consideration safety, security, available resources, and need." Id. The Southern Desert Correctional Center ("SDCC") adopted OP 562 guidelines which provide that "[i]nmates

will be authorized and permitted to exercise accepted and approved religious activities within their assigned cells. There are no restrictions that prohibit inmates from pursuing their religious preferences within the confines of their assigned cell…" Id. at 3. It also provides that "[i]nmate movement to and from the religious services will be in compliance with all unit movement policies of inmates between housing units and the chapel. Id. The inmate movement guidelines require that all religious services be scheduled, and all requests must be made to the chaplain at least one week in advance. Id. at 4. There are capacity limits for inmates in the chapel at one time. Id. It is also stated that "[i]t shall be the responsibility of all staff to ensure that" the movement procedures and schedules are complied with and maintained. (35-4 at 1).

Inmates seeking to sign up for religious activities must first coordinate with either the day or swing shift officers, and then submit their inmate request form for the specified activity to the Chaplain, who then approves the request and enters the approval to the call out roster. (#35-4, 5–6). To account for safety and security within the SDCC, all movement to and from the religious services must be according to the procedures put in place. (#35-3, at 3). Chapel services must operate on a strict schedule to properly accommodate for all the inmates and religions represented at the SDCC. (#35-5, at 3).

Lewis practices Islam. (#11, at 7). One Islamic religious practice consists of cleaning oneself before prayer. (#35-5, at 3–4). This requires the washing of the body, including the hands, mouth, nostrils, ears, forehead, throat, arms, elbows, head, neck, fingers, ankles, and feet. Id. This process can be done as long as running water is available and does not necessarily require a shower. Id. Lewis has a sink in his cell. (#35-6, at 3).

On March 20, 2015, at approximately 12:19 pm, Lewis was unable to use the shower before the Nation of Islam chapel services began at 1:30 pm. (#11, 7, #35-6, at 3). Other inmates were let out of their cells for gym, and those who did not participate in gym had to remain in their cells. (#1-2, at 24, #35-6, at 2–3). Lewis did not attend the gym that day and thus was unable to leave his cell. Id.

C/O Mesa was relieved of his shift duties at 12:56 pm. (#35-6, at 4). The C/O who replaced C/O Mesa for that shift also attempted to release three inmates to the chapel, but per protocol,

they were returned to their cells because the chapel was full. Id. C/O Mesa was not on shift during the time that inmates were released for chapel services. Id. Because Lewis was denied access to the shower and the chapel services, he filed a grievance with the SDCC mentioning C/O Mesa on March 20, 2015. (#1-2, 25).

**B. Claim 4**

Lewis was brought in for a disciplinary hearing on March 2, 2016, after a prison official charged him with gang activities and possession of contraband. (#35-7, at 2). During a search of Lewis's cell, his notebook contained writings referencing "Fruit of Islam" which is a paramilitary wing of the Nation of Islam. Id. Inside the book were the names of fifteen inmates and their ranking at SDCC, as well as three inmates that had been suspended and/or had bad standings. (Id., #1-4, at 73–81). These writings were suspiciously related to gang activity and considered to jeopardize the safety and security of the prison. Id. Sgt. Fowler led the hearing. (#35-8). During the hearing, Lewis called four witnesses in support of his position. Id. Sgt. Fowler concluded that Lewis was attempting to create a gang while conducting business for the paramilitary wing of his religion, and that it was unnecessary and illegal in a prison setting. Id. Sgt. Fowler found Lewis guilty on both charges. Id.

II. Legal Standard

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See FED. R. CIV. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

All justifiable inferences must be viewed in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by

affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "Where evidence is genuinely disputed on a particular issue—such as by conflicting testimony—that 'issue is inappropriate for resolution on summary judgment.'" Zetwick v. Cnty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (quoting Direct Techs., LLC v. Elec. Arts, Inc., 836 F.3d 1059, 1067 (9th Cir. 2016)).

III. Analysis

**A. Claim 1**

Lewis alleges that C/O Mesa, under color of state law, violated his rights to the free exercise of religion, equal protection, and his prisoner rights under RLUIPA.

1. Free Exercise of Religion

Lewis argues that C/O Mesa violated his constitutional right to the free exercise of his religion when he was denied use of the shower and chapel services. "Inmates clearly retain protections afforded by the First Amendment." O'Lone v. Estate of Shabazz, 107 S.Ct. 2400, 2404 (1987). "In general, a plaintiff will have stated a free exercise claim if: (1) "the claimant's proffered belief [is] sincerely held;" and (2) "the claim [is] rooted in religious belief, not in purely secular philosophical concerns." Walker v. Beard, 789 F.3d 1125, 1138 (9th Cir. 2015). "Although prisoners enjoy First Amendment protection, their rights under the Free Exercise Clause are limited by "institutional objectives and by the loss of freedom concomitant with incarceration." Id. "To that end, a prisoner's Free Exercise Clause claim will fail if the State shows that the challenged action is "reasonably related to legitimate penological interests." Id. The Supreme Court has held that valid penological objectives are "deterrence of crime, rehabilitation of prisoners, and institutional security." O'Lone, 107 S.Ct., at 2404. "To ensure that courts afford appropriate deference to prison officials… prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." Id.

Lewis, a Muslim, surely has a sincerely held belief. However, the Court has not been presented with evidence sufficient to support the claim that his right to exercise his religious

beliefs has been violated. Lewis argues that C/O Mesa wouldn't let Lewis go to the showers before the Muslim chapel services began because his unit was on lockdown. (#11, at 7). Lewis claims that C/O Mesa told him "I never read about having to give you people [Muslims] showers." Id. C/O Mesa has presented evidence that a shower is not required for the washing process before prayer, but that running water is all that is necessary. (#35-5, at 3–4, see Huda, *Wudu or Ablutions for Islamic Prayer*, LEARN RELIGIONS, Aug. 27, 2020, https://www.learnreligions.com/wudu-ablutions-for-islamic-prayer-3879518). Lewis had a sink in his cell so he could have washed himself before either praying in his cell or attending chapel services. (#35-6, at 3). Lewis has not provided any evidence to refute this point. In fact, Lewis himself states in his response that "[r]egular ablution or WuDu, however, can be performed with running water from [the] sink."

Lewis also asserts that at 1:39 pm he requested to go the chapel, but C/O Mesa told him that services were canceled. Id. at 8. Lewis says that services were not canceled because he could see from his cell that other people were being let inside the entrance of the chapel for services. Id. However, C/O Mesa has presented evidence showing that he was relieved of his shift duties at 12:56 pm. (#35-6, at 4). Therefore, C/O Mesa could not have been the one to deny Lewis entrance to the chapel. Additionally, C/O Mesa has presented evidence that the C/O who replaced C/O Mesa attempted to release three inmates to enter the chapel, but per protocol, they were returned to their cells because the chapel was full. Id. Capacity limitations exist to preserve safety within the prison and is a valid penological interest. See O'Lone, 482 U.S. at 351–52. Lewis was also able to participate in prayer within the confines of his cell so being denied chapel services on this occasion was not a violation of his free exercise rights. Plaintiff has failed to meet his burden to demonstrate that a genuine issue of material fact exists. Lewis was not denied his right to freely exercise his religion. Therefore, the Court grants summary judgment in favor of C/O Mesa on Plaintiff's free exercise claim.

2. Equal Protection

Lewis argues that C/O Mesa violated his right to equal protection under the law. The "Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction

the equal protection of the laws' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendant's acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001).

Lewis alleges that C/O Mesa prohibited him from using the showers and attending the religious services because Lewis is Muslim. (#11, at 7–8). However, Lewis fails to point to any specific evidence to support this allegation besides his testimony that showering is required, and that C/O Mesa lied to him, saying that the service was canceled. Id. It is undisputed that a full shower is not required for proper washing before prayer. (#35-5, at 3–4, see Huda, *Wudu or Ablutions for Islamic Prayer*, LEARN RELIGIONS, Aug. 27, 2020, https://www.learnreligions.com/wudu-ablutions-for-islamic-prayer-3879518). Lewis stated that he requested to attend chapel services at 1:39 pm and was denied, but C/O Mesa has provided undisputed evidence showing that he was relieved of his duties on shift at 12:56 pm, so C/O Mesa could not have denied Lewis access to the chapel. (#35-6, at 4). Further, the chapel service was already full at that time, as is demonstrated by the shift log, so Lewis would have been unable to attend anyway. Id. Finally, nothing was stopping Lewis from practicing in his cell. (#35-2, at 2). Without more evidence demonstrating that C/O Mesa acted with intent or purpose to discriminate against Lewis because of his religious beliefs, Lewis cannot satisfy the burden required of the nonmoving party. Thus, summary judgment is granted to Defendant Mesa on the equal protection claim.

3. RLUIPA

Lewis argues that C/O Mesa, under color of state law, violated his rights under RLUIPA. RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution… unless the government demonstrates that imposition of the burden on that person– (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a)(1)-(2).

"RLUIPA is 'to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs.'" Shilling v. Crawford, 536 F.Supp.2d 1227, 1232 (D. Nev. 2008). "The plaintiff bears the initial burden of demonstrating a prima facie claim that the prison's policies or actions constitute a substantial burden on the exercise of his religious beliefs." Id. "If the plaintiff meets this burden, the prison bears the burden of persuasion to prove that the substantial burden both furthers a compelling belief and employs the least restrictive means." Id. "RLUIPA does not authorize suits for damages against state officials in their individual capacities because individual state officials are not recipients of federal funding and nothing in the statute suggests any congressional intent to hold them individually liable. Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015).

Lewis alleges that C/O Mesa denied him use of the shower and religious services, which was a substantial burden on the exercise of his beliefs. (#11, 7–10). However, showering was not necessary for him to practice his religion, and C/O Mesa was not on shift when Lewis asked to be taken to the chapel to attend services. (#35-5, at 3–4, #35-6, at 4). Additionally, Lewis could have practiced his religion within his cell without attending the chapel services, which were already full when Lewis wanted to attend. (#35-6, at 4). The evidence does not establish a substantial burden on Lewis' exercise of religion.

Lewis is also asking for monetary damages in addition to declaratory judgment and injunctive relief. (#11, at 32). RLUIPA does not authorize suits for damages, and even if it did, Lewis has failed to meet his burden of proving a genuine issue of material fact for a jury to deliberate about. Therefore, summary judgment is granted to Defendant Mesa on the RLUIPA claim.

**B. Claim 4**

Lewis also claims that his Fourteenth Amendment due process rights were violated during his disciplinary hearing with Sgt. Fowler. (#11, at 21). Plaintiff must establish the existence of a liberty interest when stating a cause of action for deprivation of procedural due process. See Sandin v. Conner, 515 U.S. 472, 473 (1995). Prisoners have a liberty interest when confinement

"imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. The Supreme Court held that prisoners facing proceedings where the loss of good-time or an imposition of solitary confinement receive advance written notice of the claimed violation, a written statement of fact findings, and "a right to call witnesses and present documentary evidence" so long as it would not be "unduly hazardous to institutional safety or correctional goals[.]" Wolff v. McDonnell, 418 U.S. 539, 540 (1974). The Court held that confrontation and cross-examination of witnesses was not constitutionally required. Id. The Court also held that "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board…" Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985). This is because "[p]rison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." Id.

Lewis was given notice of his charges on December 18, 2015, which was two days after the "date of incident." (#35-7, at 2). The notice of charges included a report or findings of fact, that described the incident and why the correctional officer believed Lewis was committing a violation of prison policy. Id. Lewis argues in his response that Sgt. Fowler refused to make Lewis' witnesses available, but the second half of the disciplinary hearing with Sgt. Fowler was recorded, and Sgt. Fowler stated that Lewis called four witnesses: Chaplin Youngblood, Warden Williams, Inmate Dershawn Reed, and Inmate William England. (#35-5). Sgt. Fowler stated in the recording that he spoke to all four witnesses, and Lewis did not object. Id. Summary judgment requires that "the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but must produce specific facts… showing there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Lewis fails to point to anything specific which would support his claim that he was denied his right to call witnesses, and the evidence supplied by Sgt. Fowler refutes this claim. Sgt. Fowler found that Lewis was guilty of the allegations and he based that conclusion on his discussions with the witnesses and

the evidence contained in Lewis' notebook. (#35-5).

Sgt. Fowler also gave notice to Lewis that he had ten days to appeal Sgt. Fowler's decision. Id. The Court finds this meets the "some evidence" standard required of a prison disciplinary hearing. Without more pointed evidence by Lewis showing a lack of due process, the Court finds there is no genuine issue of material fact, and therefore, summary judgment for Claim 4 is granted.

**C. Statute of Limitations**

C/O Mesa and Sgt. Fowler argue that Lewis has failed to file his complaint in accordance with the applicable statute of limitations. § 1983 does not contain its own statute of limitations so "federal courts borrow the statute of limitations for § 1983 claims applicable to personal injury claims in the forum state." Rodriguez v. Dzurenda, No. 3:17-cv-00205-MMD-CBC, 2019 WL 2612661 at *4 (D. Nev. Apr. 5, 2019). The statute of limitations for personal injury claims in Nevada is two years. NRS 11.190(4)(e). "Federal law determines when a cause of action accrues and when the statute of limitations begins to run for a § 1983 claim. Under federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." Belanus v. Clark, 796 F.3d 1021, 1025 (2015). "[T]he applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process." Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005).

Lewis first filed a grievance against C/O Mesa on March 20, 2015. (#1-2, at 25). This is the first day he knew of his alleged injury. Lewis filed the present suit on October 3, 2019, which is over three years between the time the tolling period ended and the present case began. (#1). Therefore, Lewis has failed to file § 1983 in a timely manner. Thus, if the Court was not dismissing Plaintiff's action for failing to raise genuine issues of material fact, it would dismiss his claims pursuant to the statute of limitations.

**D. Qualified Immunity**

C/O Mesa and Sgt. Fowler also argue summary judgment is appropriate because they are both entitled to qualified immunity. Qualified immunity protects "governmental officials performing discretionary functions… from liability for civil damages insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether an individual officer is entitled to qualified immunity, courts "ask (1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." C.B. v. City of Sonora, 769 F.3d 1005, 1022 (9th Cir. 2014). Qualified immunity protects "all but the incompetent or those who knowingly violate the law." Stanton v. Sims, 571 U.S. 3, 6 (2013).

1. C/O Mesa

C/O Mesa is entitled to qualified immunity because there is no evidence indicating that he violated Lewis' First Amendment rights. Lewis did not require a shower to wash himself and C/O Mesa could not have denied him the right to attend chapel services because C/O Mesa was not on shift during the time Lewis alleges he was. (#35-5, at 3–4, #35-6, at 4). The Court is sympathetic to Lewis' devotion to his faith; however, he has not presented evidence enough to support his claim that his rights were violated by C/O Mesa.

2. Sgt. Fowler

Sgt. Fowler is entitled to qualified immunity because there is no evidence that he denied Lewis his due process rights during the disciplinary hearing. Lewis received a charging notice in a timely manner along with a statement of the facts, and he was able to call witnesses. (#35-7, at 2, #35-5). Sgt. Fowler listened to those witnesses and concluded that Lewis was guilty. (#35-5). Because "some evidence" supports the decision by Fowler the Court defers to that decision. See Superintendent, Mass. Corr. Inst., Walpole, 474 U.S. at 455.

IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (#35) is **GRANTED;**

**IT IS FURTHER ORDERED** that the Clerk of the Court enter **JUDGMENT** for Defendants Fower and Mesa and against Plaintiff.

DATED this 22 day of September, 2022.

Kent J. Dawson
United States District Judge